**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ERIC BAKER,<br>Plaintiff, | ) | Civil Action File No. |
| v. | ) | |
| MOREHOUSE COLLEGE, INC.<br>Defendant. | ) | JURY TRIAL DEMANDED |

**COMPLAINT**

COMES NOW, Plaintiff, Eric Baker, by and through undersigned counsel, Barrett & Farahany LLP, and hereby files suit against Defendant, Morehouse College, Inc. ("Morehouse"), showing the Court as follows:

**Introduction**

1. This is an action for retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. (the "ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504").

**Parties**

2. Mr. Baker is a resident of Fulton County, Georgia.

3. Morehouse is a Georgia Corporation with its principal place of business in Fulton County, Georgia.

4. Morehouse operates a private college.

5. Morehouse employs over 700 employees.

6. Morehouse receives federal funding from multiple federal agencies with regulations implementing Section 504.

**Jurisdiction and Venue**

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count I of this Complaint, which arises out of Titles I and V of the ADA, 42 U.S.C. § 12111 *et seq.* and 42 U.S.C. § 12201 *et seq.*, respectively.

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count II of this Complaint, which arises out of Titles III and V of the ADA, 42 U.S.C. § 12181 *et seq.* and 42 U.S.C. § 12201 *et seq.*, respectively.

9. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count III of this Complaint, which arises out of Section 504.

10. Venue is proper in the Court because all parties are located within the Atlanta Division of the Northern District of Georgia.

11. Venue is proper in this Court because the practices described herein occurred within the Atlanta Division of the Northern District of Georgia.

**Statement of Facts**

12. Mr. Baker was hired by Morehouse as a Professor of Practice in 2010.

13. Mr. Baker is graduate of Morehouse.

14. Mr. Baker has a bachelor's degree in Mass Media Arts.

15. At the time he was hired, Mr. Baker had already established himself as a successful television writer.

16. During his professional career, Mr. Baker wrote under the pen name Adisa Iwa.

17. Mr. Baker wrote for shows including *NYPD Blue*, *Law & Order: SVU* and *Dark Angel*.

18. During his employment at Morehouse, Mr. Baker helped found Morehouse's Cinema, Television, and Emerging Media Studies (CTEMS) program and major.

19. At all relevant times, CTEMS was managed by its Academic Program Director and Department Chair, Stephane Dunn ("Dunn").

20. Mr. Baker consistently received favorable faculty reviews at Morehouse.

21. Mr. Baker consistently received favorable student reviews at Morehouse.

22. Mr. Baker aided CTEMS graduates in obtaining successful employment in the media industry.

23. Mr. Baker aided in establishing and maintaining a high reputation and ranking for the CTEMS program.

24. CTEMS provided career placement assistance to its graduates.

25. Students in the CTEMS program were regularly hired by CTEMS faculty for research or project assistance.

26. CTEMS students could be eligible for federally assisted student work-study programs.

27. In 2017, Mr. Baker learned of a student ("Student A")[1] who was not receiving approved accommodations for the student's disabilities.

28. Mr. Baker discovered that Dunn was refusing to accommodate Student A.

29. Mr. Baker discovered that Dunn did not believe that Student A was really disabled.

30. Mr. Baker discovered that Assistant Professor Avery Williams ("Williams") was refusing to accommodate Student A.

31. Mr. Baker discovered that Williams did not believe Student A was really disabled.

32. Student A had been approved for disability accommodations by Morehouse's Student Counseling & Disabilities Center.

33. Because Student A was not receiving accommodations, Student A failed courses taught by Dunn.

---

[1] Because student records are considered confidential under federal law, student names will be replaced by pseudonym's for the purpose of this Complaint. Each name has previously been disclosed to Morehouse.

34. Because Student A was not receiving accommodations, Student A failed courses taught by Williams.

35. Because Student A was not receiving accommodations, Student A was informed that they would not graduate.

36. Student A informed Mr. Baker that they had become suicidal.

37. Mr. Baker informed Counseling & Accessibility Services of Student A's suicide risk.

38. Mr. Baker informed Associate Provost David Rice ("Rice") that Student A was being denied accommodations by Dunn.

39. Mr. Baker informed Rice that Student A was being denied accommodations by Williams.

40. Mr. Baker informed Rice that Student A would not graduate because of denied accommodations.

41. Mr. Baker informed Morehouse's in-house attorney that Student A was being denied accommodations by Dunn.

42. Mr. Baker informed Morehouse's in-house attorney that Student A was being denied accommodations by Williams.

43. Mr. Baker informed Morehouse's in-house attorney that Student A would not graduate because of denied accommodations.

44. Following Mr. Baker's complaints, Student A was permitted to graduate.

45. In Mr. Baker's first annual review following his reports regarding Student A, Dunn stated, "If you don't learn to be a team player, I'm going to have to get rid of you and replace you with someone else."

46. Mr. Baker asked Dunn for clarification.

47. Dunn responded by saying, "[Student A]. When the Morehouse attorney called and asked you about him, you should have covered for me and [Williams]. Your loyalty needs to be to me and not to these students."

48. In 2018, a student ("Student B") applied for entry into the CTEMS program.

49. In Student B's application materials, Student B disclosed being HIV-positive.

50. In Student B's application materials, Student B disclosed suffering bouts of depression.

51. Mr. Baker was on the program admissions committee reviewing CTEMS applications.

52. Dunn was on the program admissions committee reviewing CTEMS applications.

53. Williams was on the program admissions committee reviewing CTEMS applications.

54. On or about December 4, 2018, in reference to Student B, Williams stated, I don't know if we should admit a student who is HIV positive."

55. Mr. Baker responded to Williams' statement in Paragraph 54 by saying, "We can't deny a student admittance to CTEMS because [they are] HIV positive."

56. Williams responded to Mr. Baker's statement in Paragraph 55 by saying that the committee could consider Student B's HIV status because Student B disclosed it voluntarily.

57. Mr. Baker responded to Williams' statement in Paragraph 56 by stating that it was "morally wrong and probably illegal."

58. Williams then argued that Student B could be denied admission to CTEMS because of Student B's depression.

59. Mr. Baker again objected to the use of a disability in admissions decisions.

60. Following the exchange in Paragraphs 54-59, the committee voted to admit Student B.

61. Shortly after the exchange in Paragraphs 54-59, Mr. Baker documented the conversation in an email to Provost Michael Hodge ("Hodge") and Morehouse attorney Joy White ("White").

62. The email referenced in Paragraph 61 informed Hodge and White that Student B was "at least" the second student to suffer discrimination by Dunn and Williams.

63. The email referenced in Paragraph 61 informed Hodge and White that Student A was denied accommodations previously.

64. Hodge emailed Mr. Baker to confirm receipt of the email referenced in Paragraph 61.

65. White emailed Mr. Baker to confirm receipt of the email referenced in Paragraph 61.

66. In January 2020, Mr. Baker noticed that Student B had never enrolled in CTEMS courses.

67. Mr. Baker contacted Student B to investigate why Student B was not enrolled in CTEMS.

68. Student B informed Mr. Baker that they had been rejected by the CTEMS committee.

69. Mr. Baker informed Student B that the committee had voted to admit them.

70. Student B forwarded Mr. Baker an email from Dunn stating that the committee had rejected Student B.

71. On January 20, 2021, Student B filed a lawsuit against Morehouse in the Northern District of Georgia, Civil Case No. 1:21-cv-00331-MLB.

72. Student B's lawsuit was brought under Section 504 for their rejection from CTEMS.

73. Attached to Student B's Complaint as Exhibit A was a witness affidavit provided by Mr. Baker.

74. Mr. Baker's affidavit listed the actions of Dunn and Williams detailed above.

75. Upon information and belief, in or around May, 2021, Morehouse and Student B entered into a settlement agreement.

76. On May 15, 2021, Student B filed a voluntary dismissal pursuant to the settlement agreement.

77. On or about August 6, 2021, Associate Provost Keith Howard ("Howard") notified Mr. Baker that his contract would not be renewed.

78. On or about August 6, 2021, Mr. Baker's employment was terminated by Morehouse.

79. Mr. Baker never received a contract renewal following his affidavit in support of Student B.

80. Mr. Baker never received a contract renewal following the settlement of claims between Student B and Morehouse.

81. Mr. Baker was terminated at the first available opportunity following his affidavit in support of Student B.

82. Mr. Baker was terminated at the first available opportunity following the settlement of claims between Student B and Morehouse.

83. At the time of Mr. Baker's termination, the Fall 2021 schedule of classes had already been posted.

84. At the time of Mr. Baker's termination, Mr. Baker was scheduled to teach classes in the Fall of 2021.

85. At the time of Mr. Baker's termination, Mr. Baker's courses already had students enrolled.

86. Morehouse informed Mr. Baker that he was being terminated because he did not have a master's degree.

87. In 2015, Morehouse enacted a policy requiring terminal degrees for certain faculty members.

88. The policy referenced in 2015 went into effect at the start of Fall Semester, 2018.

89. In 2015, then-Associate Provost Jann Adams ("Adams") informed Mr. Baker that he would not be subject to the policy referenced in Paragraph 87 because he was a Professor of Practice.

90. Had Mr. Baker been informed he would be subject to the policy referenced in Paragraph 87, Mr. Baker would have obtained a master's degree.

91. In the fine arts, a master's degree is considered a terminal degree.

92. Mr. Baker worked for three years following the effective date of the policy referenced in Paragraph 87.

93. Prior to August 2021, Mr. Baker was never disciplined or counseled regarding the policy referenced in Paragraph 87.

94. On or about August 6, 2021, Mr. Baker informed Howard that Mr. Baker was a Professor of Practice not subject to the policy referenced in Paragraph 87.

95. In response to Mr. Baker's statement referenced in Paragraph 94, Howard stated that Morehouse does not have a position of Professor of Practice.

96. As of October 13, 2021, Morehouse had at least three other Professors of Practice on its website.

97. As of October 13, 2021, Edward "Buzz" Palmer ("Palmer") was a Professor of Practice at Morehouse.

98. As of October 13, 2021, Palmer did not have a terminal degree.

99. As of October 13, 2021, Ebony Perro was a Professor of Practice at Morehouse.

100. As of October 13, 2021, Perry Sweeper was a Professor of Practice at Morehouse.

**Count I: Retaliation Under Titles I and V of the ADA**

101. Plaintiff reasserts and incorporates Paragraphs 1 through 100 as if fully set forth herein.

102. Morehouse is subject to the requirements of Title I of the ADA, as shown in Paragraph 5.

103. Student A suffered discrimination made unlawful by the ADA, as shown in Paragraphs 27-35.

104. Mr. Baker had a good faith, reasonable belief that Student A suffered discrimination on the basis of disability.

105. Mr. Baker had a good faith, reasonable belief that the discrimination referenced in Paragraph 103 affected employment eligibility, as shown in Paragraphs 24-26.

106. The communication detailed in Paragraphs 38-40 was a protected report under the ADA.

107. The communication detailed in Paragraphs 41-43 was a protected report under the ADA.

108. Student B suffered discrimination made unlawful by the ADA, as shown in Paragraphs 54-60 and 70.

109. Mr. Baker had a good faith, reasonable belief that Student B suffered discrimination on the basis of disability.

110. Mr. Baker had a good faith, reasonable belief that the discrimination referenced in Paragraph 109 affected employment eligibility, as shown in Paragraphs 24-26.

111. The communications detailed in Paragraphs 55, 57, and 59 constituted a protected objection under the ADA.

112. The communication in Paragraphs 61-63 constituted a protected report under the ADA.

113. The affidavit detailed in Paragraphs 73-74 constituted protected participation under the ADA.

114. Mr. Baker suffered the adverse employment action of contract non-renewal.

115. Mr. Baker suffered the adverse employment action of termination.

116. Causation may be inferred from the statements in Paragraphs 45 and 47.

117. Causation may be inferred from Paragraphs 79-85.

118. Morehouse's alleged reason for terminating Mr. Baker is merely pretext, as shown in Paragraphs 83-100.

119. As a result of his termination, Mr. Baker has suffered lost wages, lost benefits, emotional distress, harm to reputation, and other damages.

120. Mr. Baker timely filed a charge with the Equal Employment Opportunity Commission on January 29, 2022.

121. Mr. Baker received his Notice of Right to Sue on August 18, 2022.

**Count II: Retaliation Under Titles III and V of the ADA**

122. Plaintiff reasserts and incorporates Paragraphs 1 through 121 as if fully set forth herein.

123. Student A suffered discrimination made unlawful by the ADA, as shown in Paragraphs 27-35.

124. Mr. Baker had a good faith, reasonable belief that Student A suffered discrimination on the basis of disability.

125. The communication detailed in Paragraphs 38-40 was a protected report under the ADA.

126. The communication detailed in Paragraphs 41-43 was a protected report under the ADA.

127. Student B suffered discrimination made unlawful by the ADA, as shown in Paragraphs 54-60 and 70.

128. Mr. Baker had a good faith, reasonable belief that Student B suffered discrimination on the basis of disability.

129. The communications detailed in Paragraphs 55, 57, and 59 constituted a protected objection under the ADA.

130. The communication in Paragraphs 61-63 constituted a protected report under the ADA.

131. The affidavit detailed in Paragraphs 73-74 constituted protected participation under the ADA.

132. Mr. Baker suffered the adverse employment action of contract non-renewal.

133. Mr. Baker suffered the adverse employment action of termination.

134. Causation may be inferred from the statements in Paragraphs 45 and 47.

135. Causation may be inferred from Paragraphs 79-85.

136. Morehouse's alleged reason for terminating Mr. Baker is merely pretext, as shown in Paragraphs 83-100.

137. As a result of his termination, Mr. Baker has suffered lost wages, lost benefits, emotional distress, harm to reputation, and other damages.

**Count III: Retaliation Under Section 504**

138. Plaintiff reasserts and incorporates Paragraphs 1 through 137 as if fully set forth herein.

139. Morehouse is subject to the requirements of Section 504, as shown in Paragraphs 6 and 26.

140. Student A suffered discrimination made unlawful by Section 504, as shown in Paragraphs 27-35.

141. Mr. Baker had a good faith, reasonable belief that Student A suffered discrimination on the basis of disability.

142. The communication detailed in Paragraphs 38-40 was a protected report under Section 504.

143. The communication detailed in Paragraphs 41-43 was a protected report under Section 504.

144. Student B suffered discrimination made unlawful by Section 504, as shown in Paragraphs 54-60 and 70.

145. Mr. Baker had a good faith, reasonable belief that Student B suffered discrimination on the basis of disability.

146. The communications detailed in Paragraphs 55, 57, and 59 constituted a protected objection under Section 504.

147. The communication in Paragraphs 61-63 constituted a protected report under Section 504.

148. The affidavit detailed in Paragraphs 73-74 constituted protected participation under Section 504.

149. Mr. Baker suffered the adverse employment action of contract non-renewal.

150. Mr. Baker suffered the adverse employment action of termination.

151. Causation may be inferred from the statements in Paragraphs 45 and 47.

152. Causation may be inferred from Paragraphs 79-85.

153. Morehouse's alleged reason for terminating Mr. Baker is merely pretext, as shown in Paragraphs 83-100.

154. As a result of his termination, Mr. Baker has suffered lost wages, lost benefits, emotional distress, harm to reputation, and other damages.

## Prayer for Relief

WHEREFORE Plaintiff respectfully prays for relief as follows:

A. For a trial by jury;

B. For a finding that Defendant violated Plaintiff's rights as set forth herein;

C. For a judgment in Plaintiff's favor for reinstatement or front pay, back pay plus interest, compensatory damages for emotional distress and harm to reputation, punitive damages, attorney fees, and litigation costs; and

D. For any such other and further relief as the Court deems proper and just.

This 9th day of November 2022.

Respectfully submitted,

**BARRETT & FARAHANY**
*s/ Micah Barry*
Micah Barry
Georgia Bar No. 103184
Patrick Reid
Georgia Bar No. 88876P[2]
Provisionally Admitted Attorney
*Attorneys for Plaintiff*

P.O. Box 530092
Atlanta, Georgia 30353-0092
(404) 214-0120
(404) 445-1018
(404) 214-0125 facsimile
micah@justiceatwork.com

[2]Matthew Billips is the Supervising Attorney for Patrick Reid
Georgia Bar No. 057110

**JURY DEMAND**

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

This 9th day of November, 2022.

Respectfully submitted,

**BARRETT & FARAHANY**

*s/ Micah Barry*
Micah Barry
Georgia Bar No. 103184

**FONT AND POINT CERTIFICATION**

The undersigned counsel for Plaintiff certifies that the within and foregoing **COMPLAINT** was prepared using Times New Roman, 14-point font in accordance with LR 5.1(B).

This 9th day of November, 2022.

Respectfully submitted,

**BARRETT & FARAHANY**

*s/ Micah Barry*
Micah Barry
Georgia Bar No. 103184